Peelle, J.,
delivered the opinion of the court:
This suit is brought under a provision of the act of June 7, 1897 (30 Stat. L., p. 89), making appropriations for the current and contingent expenses of the Indian Department, which reads as follows:
“ That the claim of the Fond du Lac band of Chippewa Indians of Lake Superior for compensation arising from the alleged difference in area of the reservation as actually set apart to them and that provided to be set apart, under the fourth subdivision of article two of the treaty between the United States and the Chippewas of Lake Superior and the Mississippi, made and concluded at Lapointe, in the State of Wisconsin, on the thirtieth day of September, in the year eighteen hundred and fifty-four, proclaimed January twenty-ninth, eighteen hundred and fifty-five, be, and the same is hereby, referred to the Court of Claims; and jurisdiction is hereby conferred on said court, with right of appeal as in other cases, to hear and determine the difference, if any, between the area of the reservation actually set apart to said Indians and that provided to be set apart in said treaty, if any, the said action to be brought by the said Fond du Lac band of Chippewa Indians against the United States by petition, veri *432 fied under oath, by. any duly authorized attorney for said Indians, within thirty days from the passage of this act; and in hearing and determining the said matter the court shall take into consideration and determine whether since the date of said treaty there has been any equitable adjustment made to said Indians in whole or in part for the alleged difference in area, and the court shall also take into consideration and make due allowance for the fact that said Indians were given a share in the proceeds of the lands sold and disposed of under and pursuant to the provisions of an act entitled ‘An act for the relief and civilization of the Chippewa Indians in the State of Minnesota,’ approved January fourteenth, eighteen hundred and eighty-nine. The Attorney-General shall appear and answer said petition within thirty days from the filing thereof, unless the time for pleading be extended by the court tor cause shown; and said action shall have precedence in said court, and when completed the court shall make a full report to Congress.”
By the terms of paragraph 4, article 2, of the treaty of September 30,1854 (10 Stat. L., 1109,1110), between the United States and the Chippewa Indians of Lake Superior and the Mississippi, there was to be set apart to the claimants' as and for a reservation a tract of land bounded as follows:
“ For the Fond du Lac bands, a tract of land bounded as follows: Beginning at an island in the St. Louis River, above Knife Portage, called by the Indians Paw-paw-sco-me-me-tig, running thence west to the boundary line heretofore described, thence north along said boundary line to the mouth of Savannah River, thence down the St. Louis River to the place of beginning. And if said tract shall contain less than one hundred thousand acres, a strip of land shall be added on the south side thereof large enough to equal such deficiency.”
Under that treaty the land described therein was surveyed, beginning at a point opposite the center of the island named, and as thus surveyed the area was found to contain 125,294 acres, or 25,294 acres more than the minimum number stated in the treaty; but the southern boundary line, though in conformity with the treaty, was not placed far enough south to include the settlements and buildings of the claimants, as they supposed it would be when they signed the treaty. To meet their objection and to allay their discontent in this respect the President, the year following, caused a new survey to be made, whereby, beginning at the southeast corner of the original survey, and running thence south 5 miles and 5 chains to a width of 12 miles and 60 chains west, there were added on the south, *433 adjoining fcbe southern boundary of the original survey 41,280 acres, mostly rolling, arable lands. But in extending, as was done, the west line of said new survey north to the St. Louis River, there were excluded 66,453 acres, mostly swamp and unfit for cultivation, on the west which were within the original survey, thereby diminishing their reservation to 100,121 acres, and herein lies the cause of this suit..
The new survey appears to have given satisfaction to the chiefs and headmen of the claimants at the time, but whether they knew that the lands on the west had been excluded does not appear, and no agreement appears to have been entered into between the United States and the claimants concerning the new boundary lines of their reservation.
The reservation as thus defined and established, however, has ever since been recognized by the United States, and no complaints or objections were ever made concerning the same by the claimants to the defendants’ officers until the commissioners, pursuant to the act of January 14, 1889 (25 Stat. L., 642), commenced to negotiate with them for the cession and relinquishment of their title and interest in said reservation, as set forth in finding six.
The purpose of that act, as indicated by the title, was “for the relief and civilization of the Chippewa Indians in the State of Minnesota,” and in furtherance of that purpose it was provided in the first section that the commissioners appointed, as therein provided, were “ to negotiate with all the different bands or tribes of Chippewa Indians in the State of Minnesota for the complete cession and relinquishment in writing of all their title and interest in and to all the reservations of said Indians in the State of Minnesota, except the White Earth and Red Lake reservations, and to all and so much of these reservations as in the judgment of said commission is not required to make and fill the allotments required by this and existing acts and shall not have been reserved by the commissioners for said purposes,” as thereinafter stated. And further, that all lands not so set apart in severalty should be, as set forth in section 4, surveyed and subdivided into 40-acre lots, and that those lands with standing pine timber should be designated as “pine lands” and should be sold as therein provided, for not less than $3 per 1,000 feet, board measure, *434 of tbe pine timber tbereon, and all other lands were to be designated as “ agricultural lands,” to be sold under tbe homestead law for not less than $ 1.25 per acre, and the proceeds of all such lands under section 7 of the act, after deducting expenses of making the census and obtaining the cession and relinquishment, the removal and allotments, survey, etc., was required “to be placed in the Treasury of the United States to the credit of all the Chippewa Indians in tlie State of Minnesota as a permanent fund, which shall draw interest at the rate of 5 per centum per annum, payable annually for the period of fifty years after the allotments provided in this act have been made, and which interest and permanent fund shall be expended for the benefit of said Indians,” in the manner provided in said section.
Tbe findings show that the difference “between the area of the reservation actually set apart to said Indians and that provided to be set apart in said treaty” is 25,173 acres.
That being established, it only remains for the court, in the language of the act, “to take into consideration and determine whether, since the date of said treaty, there has been any equitable adjustment made to said Indians, in whole or in part, for the alleged difference in area,” and in the determination of that question the act provides that “the court shall also tahe into consideration and malee due allowance for the fact that said Indians were given a share in the proceeds of the lands sold and disposed of under and pursuant to the provisions” of the act of January 14,1889.
Although the original reservation was diminished 25,173 acres, it is quite evident from the findings of fact that the lands on the west, excluded by the last survey, were of no greater value than the lands added on the south, so that in respect of the value of the original and diminished reservations there was little, if any, difference.
At the time of the session and relinquishment of title to their respective reservations the Chippewa Indians of Minnesota numbered, including men, women, and children, 8,304, while the total area of their combined reservations, reckoning the claimants’ at 100,121 acres, contained 4,755,706 acres; thus showing that while the population of the claimants was about one-twelfth of the whole number, their reservation was about one forty-seventh of the whole acreage; and had there been *435 no diminution of the original survey it would be about one thirty-eighth of the whole acreage.
Section 3 of the act of 1889 provided for allotment in sev-eralty to all the Chippewa Indians in Minnesota, under the provisions of the act of February 8,1887 (24 Stat. L., 388), the first section of which latter act in this respect provides:
“To each head of a family, one-quarter of a section;
“To each single person over eighteen years of age, one-eighth of a section;
“ To each orphan child under eighteen years of age, one-eighth of a section; and
“To each other single person under eighteen years now living, or who may be born prior to the date of the order of the President directing an allotment of the lands embraced in any reservation, one-sixteenth of a section.”
Assuming for the purpose of an illustration that 100 acres per capita would be a fair average on the basis given, and that all the 8,304 Indians would be entitled to share alike therein; it would require 830,400 acres to meet the requirements of such allotment, leaving to be sold for the common benefit of all, at the price and in the manner provided in sections 5 and 6 of the act, 3,925,306 acres, of which about one-twelfth, or 316,000 acres, or the proceeds thereof when sold, will become the property or share of the claimants.
As shown by the commissioner’s report (House Ex. Doc., first session, Fifty-first Congress, p. 25), the Indians “ decided to take their allotments upon their reservations,” as they had the right to do under the proviso to section 3, act of 1889, which reads:
“That any of the Indians residing on any of said reservations may, in his discretion, take his allotment in severalty under this act on the reservation where he lives at the time of the removal herein provided for is effected, instead of being removed to and taking such allotment on White Earth Reservation.”
Under that provision upon the basis stated the claimants, numbering 671 souls, would be entitled to have set apart to them in severalty 67,100 acres in their reservation, or if they preferred a like amount in lieu thereof in the White Earth Reservation, and in addition thereto to share, in common with all the other Indians named, in the proceeds of the sale of the *436 residue of such lands as provided by section 7 of the act of 1889.
It will thus be seen that by the mutual acceptance of the terms and provisions of the act of 1889, and the cession and relinquishment, by all the Chippewa Indians in the State of Minnesota, of their title and interest in and to their reservations in said State, the claimants thereby became entitled to share equally with their brethren in the proceeds of the sale of nearly 4,000,000 acres of land, or to the proceeds of about 316,000 acres, equal to 470 acres per capita, in addition to the lands set apart to them in severalty for permanent homes as aforesaid.
That the claimants were greatly benefited by thus being placed upon an equality with their brethren in all their reservations in the State of Minnesota, and that such benefit greatly exceeds the difference between the area of the original and diminished reservation so set apart to the claimants, there can be no question.
It is. true that such benefit results to them by reason of the mutual action of their brethren in the cession of their reservation as aforesaid, but the Congress, by the language of the act of our jurisdiction, commands us by the imperative shall, “ to take into consideration and determine whether since the date of said treaty there has been any equitable adjustment to said Indians in whole or in part for the alleged difference in area,” and further that “the court shall also take into consideration and make due allowance for the fact that said Indians were given a share in the proceeds of the lands sold and disposed of under and pursuant to the provisions of the act entitled “An act for the relief and civilization of the Chippewa Indians in the State of Minnesota,” approved January 4, 1889.
Hence, taking into consideration the character of the lands added on the south and those excluded on the west of the original survey by the new or Forbes survey, the court is of the opinion that there was little, if any, difference in the value of the two areas occasioned thereby; and taking that into consideration with and making “ due allowance for the fact that said Indians were given a share in the proceeds of the lands sold and disposed of un’der ” the act of 1889 as aforesaid, leads the court, in giving effect to the language and evident purpose of the act, to conclude that since the date of the treaty of 1854, *437 under which the reservation was originally set apart to the claimants, there has been an equitable adjustment made to said Indians in whole “for the alleged difference in area” and that therefore the claimants are not entitled to recover compensation therefor.
The language of the jurisdictional act, to wit, “That the claim of the Fond du Lac band of Chippewa Indians of Lake Superior for compensation arising from the alleged difference in area * * * be, and the same is hereby, referred to the Court of Claims; and jurisdiction is hereby conferred on said court, with right of appeal as in other cases, to hear and determine the difference, if any, between the area of the reservation actually set apart to said Indians and that provided to be set apart in said treaty,” seems broad enough, in the light of former adjudications in this court under similar statutes, to authorize the court to render final judgment and decree; but in view of the statement of the claimants’ counsel on the trial of this case that a report to Congress of the facts in conformity with the last words of the act, “when completed the court shall make a full report to Congress,” would be satisfactory, we conclude to suspend the rendition of judgment and decree herein and report the facts to Congress with this opinion for their action.
It follows from what we have said that the claimants are not entitled to recover compensation for the difference in area between the reservation actually set apart to them and that provided to be set apart by the treaty of 1854, under which they claim.